

UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH DAKOTA
WESTERN DIVISION

| | |
|---|---|
| CONTESSA LUKKES,<br><br>Petitioner,<br><br>vs.<br><br>UNITED STATES OF AMERICA,<br><br>Respondent. | 5:20-CV-5079-CBK<br><br><br><br>**MEMORANDUM AND ORDER** |

### I. BACKGROUND

Contessa Lukkes ("petitioner") pleaded guilty before this Court in 2020 to Conspiracy to Commit Bank Fraud, in violation of 18 U.S.C. §§ 1349, 1344; three counts of Bank Fraud violative of 18 U.S.C. § 1344(2); two counts of Aggravated Identity Theft, violation of 18 U.S.C. § 1028(A)(a)(1); and Theft or Receipt of Stolen Mail, in violation of Theft or Receipt of Stolen Mail. 5:18-CR-50139-JLV, ("C.R.")[1] docs. 85 (Change of Plea Hearing), 87 (Report and Recommendations on Change of Plea), 89 (Order Adopting Report and Recommendations). United States District Court Judge Jeffrey Viken ultimately sentenced the petitioner to 33 months of imprisonment, followed by three years of supervised release, for the Conspiracy to Commit Bank Fraud, Bank Fraud, and Theft or Receipt of Stolen Mail convictions, all to run concurrently; followed by a 24 month imprisonment for the first Aggravated Identity Theft conviction, followed by three years of supervised release (to run concurrent to all other terms of supervised release); and finally 24 months of imprisonment on the second Aggravated Identity Theft conviction, followed by three years of supervised release (to run concurrent to all other terms of supervised release), with each Identity Theft conviction running consecutive to one another and to all other sentences. C.R. doc. 110. She is currently incarcerated at

---

[1] References to the underlying criminal proceedings are referred to as "C.R."

Federal Correctional Institute Waseca, in Minnesota, with an anticipated release date of September 22, 2024.

Ms. Lukkes appealed filed an appeal with the United States Court of Appeals for the Eighth Circuit, C.R. doc. 133; however, the appellate court granted the United States' motion to dismiss. C.R. doc. 152. After denying her petition for rehearing by the panel, C.R. doc. 158, the petitioner received the Circuit Court's mandate on September 8, 2020. C.R. doc. 160. Three and a half months later Lukkes filed this timely Motion to Vacate, Set Aside or Correct Sentence pursuant to 28 U.S.C. § 2255 of the Antiterrorism and Effective Death Penalty Act of 1996. All six of her claims revolve around purported ineffective assistance of counsel against Mr. Ellery Grey, under Strickland v. Washington, 466 U.S. 668 (1984), and its progeny, ranging from being induced into a guilty plea (despite her knowing and voluntary acceptance of guilt before this Court), to frustrations with enhancements applied to her advisory guideline range at sentencing. Upon initial review, this Court finds none of the claims meritorious and holds that this motion should be denied.

## II. DISCUSSION

### A. Standard of Review

To support a claim of ineffective assistance of counsel, a two-prong test must be met. Ms. Lukkes must show that her trial counsel's performance was constitutionally deficient and that she was prejudiced as a result. Dorsey v. Vandergriff, 30 F.4th 752, 757 (8th Cir. 2022). See Strickland v. Washington, 466 U.S. 668, 687–96 (1984). The petitioner must prove prejudice by showing "'that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.'" Donelson v. Steele, 16 F.4th 559, 570 (8th Cir. 2021) (*quoting* Strickland, 466 U.S. at 694). In the context of a guilty plea, petitioner must show that "but for counsel's errors, [Lukkes] would not have pleaded guilty and would have insisted on going to trial.'" United States v. Sisk, 999 F.3d 631, 635 (8th Cir. 2021) (internal quotation marks omitted). See Fast Horse v. Class, 87 F.3d 1026, 1028 (8th Cir. 1996) ("When 'it is easier to dispose of an ineffectiveness claim on the ground of lack of

sufficient prejudice, [that] course should be followed.'") (*quoting* Strickland, 466 U.S. at 697).

The heavy burden of establishing ineffective assistance of counsel is on the petitioner. Langford v. United States, 993 F.3d 633, 637 (8th Cir. 2021); Golinveaux v. United States, 915 F.3d 564, 567 (8th Cir. 2019). "The Sixth Amendment guarantees reasonable competence, not perfect advocacy judged with the benefit of hindsight." Yarborough v. Gentry, 540 U.S. 1, 6 (2003).

### B. Whether Lukkes' Pleas Were Knowing and Voluntary

First, petitioner appears to argue her trial counsel was constitutionally ineffective in encouraging her to plead guilty under the false understanding of her likely sentencing range. Lukkes seems to indicate that had she known the likely range of her sentence, she would not have pleaded guilty. The Court strains the *pro se* filing to assert her plea was not knowingly and voluntarily given because of ineffective counsel. See MOTION UNDER 28 U.S.C. § 2255 TO VACATE, SET ASIDE, OR CORRECT SENTENCE, doc. 1 at 1–30.

Petitioner's waiver of her Constitutional right to insist the charges against her be tried to a jury can only be waived by a guilty plea if it was done "knowingly and voluntarily." United States v. Grady, 931 F.3d 727, 729 (8th Cir. 2019) (*quoting* United States v. Andis, 333 F.3d 886, 890 (8th Cir. 2003) (*en banc.*)). The United States Supreme Court has set forth the standard as to voluntariness:

> A plea of guilty entered by one fully aware of the direct consequences, including the actual value of any commitments made to him by the court, prosecutor, or his own counsel, must stand unless induced by threats (or promises to discontinue improper harassment), misrepresentation (including unfulfilled or unfulfillable promises), or perhaps by promises that are by their nature improper as having no proper relationship to the prosecutor's business (e.g. bribes).

Brady v. United States, 397 U.S. 742, 755 (internal quotation marks omitted omitted). This Court takes great care in ensuring all guilty pleas entered are knowing and voluntary. Such care was taken in this matter. On November 22, 2019, petitioner Lukkes signed a plea agreement, agreeing to plead guilty to: (1) Count I of the Second Superseding Indictment, Conspiracy to Commit Bank Fraud, in violation of 18 U.S.C.

§§ 1349, 1344; (2) Counts II, IV, and IX of the Second Superseding Indictment, each charging Bank Fraud, in violation of 18 U.S.C. § 1344(2); (3) Counts XVI and XVII of the Second Superseding Indictment, each charging Aggravated Identity Theft, in violation of 18 U.S.C. § 1028A(a)(1); and (4) Count XXI of the Second Superseding Indictment, charging her with Theft or Receipt of Stolen Mail, in violation of 18 U.S.C. § 1708. PLEA AGREEMENT, C.R. doc. 80. In the Plea Agreement, the petitioner acknowledged the statutory maximum sentences she faced on each count. Id. On the same day, Lukkes signed a factual basis statement agreeing that the alleged facts were true. See STATEMENT OF FACTUAL BASIS, C.R. doc. 81. In the factual basis statement petitioner admitted to the underlying conduct substantiating these counts of conspiracy to commit bank fraud, bank fraud, aggravated identify theft, and stealing mail.

But her agreement to the plea agreement and factual basis is not all Lukkes provided to this Court as indicia of her actual guilt to these multitudes of crimes. At the change of plea hearing on December 6, 2019, before United States Magistrate Judge Daneta Wollman, petitioner testified, under oath, that the factual basis statement was true. See TRANSCRIPT, C.R. doc. 129. And to ensure these guilty pleas were being entered knowingly and voluntarily, the Court asked Lukkes, under oath, whether anyone has made threats or promises to coerce her into pleading guilty. She answered, "[n]o." Id. at 5. On December 11, 2019, Judge Viken adopted Judge Wollman's Report and Recommendation and accepted Ms. Lukkes' guilty plea. C.R. doc. 89.

Petitioner's representations during the change of plea hearing "carry a strong presumption of verity and pose a formidable barrier in any subsequent collateral proceedings." Thompson v. United States, 872 F.3d 560, 566 (8th Cir. 2017) (internal quotation marks omitted). This Court advised Lukkes of the consequences of pleading guilty, and carefully ensured that her guilty pleas were knowing and voluntary. Her subsequent collateral attack does not venture close to whittling the strong presumption from which her prior guilty pleas were taken (while under oath), regardless of supposedly ineffective counsel at the time of her change of plea.

As the United States Supreme Court observed in <u>Brady v. United States</u>, 397 U.S. 742, 756–57 (1970):

> Often the decision to plead guilty is heavily influenced by the defendant's appraisal of the prosecution's case against him and by the apparent likelihood of securing leniency should a guilty plea be offered and accepted . . . The rule that a plea must be intelligently made to be valid does not require that a plea be vulnerable to later attack if the defendant did not correctly assess every relevant factor entering into his decision. A defendant is not entitled to withdraw his plea merely because he discovers long after the plea has been accepted that his calculus misapprehended the quality of the State's case or the likely penalties attached to alternative courses of action.

Petitioner faults trial counsel for offering supposedly inaccurate likely sentencing ranges. But in her plea agreement she acknowledged the statutory maximum sentences she faced. And at her change of plea hearing, Ms. Lukkes acknowledged, under oath, that she understood the statutory maximum sentences she faced on the counts to which she was pleading guilty. See C.R. doc. 129. Petitioner's guilty pleas waved this claim. Lukkes testified under oath at the change of plea hearing that the factual basis statement was true. The factual basis statement set forth that petitioner engaged in repeated acts of bank fraud, that she conspired to commit bank fraud, that she stole others' identities, and that she stole mail. This Court asked if the factual basis statement was true. Under oath, she testified that it was.

Lukkes now asserts that she was assured by trial counsel that she would receive a more lenient sentence, such as in the range of 48 months for all the counts. See MOTION UNDER 28 U.S.C. § 2255 TO VACATE, SET ASIDE, OR CORRECT SENTENCE, doc. 1 at 4. But at her change of plea hearing this Court made clear that it was not bound by any agreed-upon sentence between the United States and her trial counsel. And at that hearing, the petitioner testified, under oath, that she understood that this Court was not bound by plea negotiations between the parties or to the advisory guideline range when determining the ultimate sentence. But this Court went further at the change of plea hearing. At the hearing, the Court asked the petitioner "do you understand that

5

essentially *there is no agreement regarding sentencing*," meaning that "[t]he Court is free to impose *whatever sentence it feels is appropriate in accordance with the law*. And if you receive a sentence, though, that you dislike or disagree with, do you understand that you cannot go back and withdraw your plea of guilty and start all over in your case? Do you understand that?" TRANSCRIPT, C.R. doc. 129 at 9 (emphases added). Lukkes responded, "[y]es." Id.

    This Court determines that, based upon the petitioner's own sworn testimony, that her plea did not result from force, threats, or promises (other than promises in the plea agreement). Petitioner's allegations as to ineffective assistance of counsel in providing supposedly false insights on her likely maximum sentence are mooted because of her sworn testimony asserting her understanding of the risks she faced in pleading guilty. Further, this Court previously determined that there was a factual basis for the guilty pleas. Petitioner's new conclusory allegations cannot erase that finding. Only ineffective assistance of counsel claims which affect the voluntary and intelligent nature of the plea would be cognizable where the defendant has entered a guilty plea when attacking her understanding of the statutory risks she faced. Accordingly, petitioner falls far short of overcoming the "strong presumption" owed to her prior sworn testimony before this Court. Thompson, 872 F.3d at 566 (internal quotation marks omitted).

### C. Applicability of Firearm Enhancement

    Next, Ms. Lukkes argues her trial counsel was defective for not properly arguing against the applicability of U.S.S.G. §2K2.4, Use of Firearm, Armor-Piercing Ammunition, or Explosive During or in Relation to Certain Crimes. See MOTION UNDER 28 U.S.C. § 2255 TO VACATE, SET ASIDE, OR CORRECT SENTENCE, doc. 1 at 31–35. Specifically, petitioner alludes to the Application Notes and Background provisions warning courts against double-counting for convictions under 18 U.S.C. §§ 924(c), 929(a). However, Lukkes *was not convicted* under either statute. Accordingly, this guideline provision is inapplicable in this matter. Mr. Grey cannot be ineffective for arguing against inapplicable guideline provisions not relevant to the underlying criminal proceedings. This ground for relief should be denied.

### D. Sophisticated Means Enhancement

Petitioner also seeks relief because trial counsel purportedly was insufficient in attacking the two-level sentencing enhancement for using a "sophisticated means" in her criminal conduct, pursuant to U.S.S.G. §2B1.1(b)(10)(C). U.S.S.B. §2B1.1(b)(10)(C), <u>Larceny, Embezzlement, and Other Forms of Theft; Offenses Involving Stolen Property; Property Damage or Destruction; Fraud and Deceit; Forgery; Offenses Involving Altered or Counterfeit instruments Other than Counterfeit Bearer Obligations of the United States</u>, states:

> If the offense otherwise involved sophisticated means and the defendant intentionally engaged in or caused the conduct constituting sophisticated means, increase by 2 levels. If the resulting offense level is less than level 12, increase to level 12.

Here, the United States Probation Office recommended a two-level enhancement because of Lukkes "washing" checks to deposit into Autumn Gregory's fraudulent account and/or cash at businesses.[2] Further, the enhancement was recommended because of petitioner's deliberate research on various websites to buy potential victims' information to bolster her chances of successfully establishing false open lines of credit. FINAL PSR, C.R. doc. 103 at ¶ 32.

However, trial counsel *did* forcefully push back against the enhancement. See DEFENDANT'S OBJECTIONS TO PRESENTENCE REPORT, C.R. doc. 96. Turning to (ultimately unpersuasive) case law, Mr. Grey took to task whether "washing" checks was so sophisticated it warranted the enhancement. See id. at 2. The Probation Office rightly noted that while check washing on its own may not be the most sophisticated practice reserved for criminal masterminds, the repeated conduct can cumulatively rise to the level of sophisticated means. See United States v. Finck, 407 F.3d 908, 915 (8th Cir. 2005) ("Repetitive and coordinated conduct, though no one step is particularly complicated, can be a sophisticated scheme. . . "[F]raud does involve some level of

---

[2] Check washing involves erasing details (either chemically or electronically), from a check so that it can be written, usually for larger amounts, to facilitate fraudulent withdrawals and deposits. See UNITED STATES POSTAL INSPECTION SERV., *Check Washing*, (last updated May 1, 2019), available at https://www.uspis.gov/news/scam-article/check-washing.

inherent sophistication"). See also United States v. Osman, 929 F.3d 962, 967 (8th Cir. 2019) (finding sophisticated means enhancement applicable on clear error review when defendant "used fake employers, stolen identities, different addresses and P.O. boxes, and that the scheme was complex, repetitive, and coordinated."). Further, this must be measured against Lukkes purchasing potential victims' personal information online to bolster her chances of successfully defrauding those unlucky enough to get within her eyesight. Mr. Grey also brought this up at the time of sentencing, fighting for his client to not receive the enhancement. See PUBLIC TRANSCRIPT OF PROCEEDINGS, doc. 131 at 10–14. Ultimately, Judge Viken overruled the objection. Id. at 14.

Regardless, on collateral review for ineffective assistance of counsel, the question is not whether this Court would have ruled differently over the sentencing objection. Rather, what matters is whether Mr. Grey was ineffective for failing to contest this enhancement. But, again, he *did* object to the enhancement.

Ms. Lukkes also turns her view to a purported preliminary draft of her factual basis statement which mentions she used "sophisticated means" in her criminal enterprise when her ultimate factual basis statement omitted the phrase. Petitioner seems to conflate trial counsel's apparent success in omitting "sophisticated means" from the factual basis statement with the Probation Office's recommendation that a "sophisticated means" *sentencing enhancement* be applied in this matter. It is without dispute that Mr. Grey was constitutionally sound in his counter to the proposed objection by the Probation Office, both in his written objections and at the sentencing hearing, an enhancement the trial court ultimately adopted. Because trial counsel was nothing less than a strong advocate on pursuing this objection in the underlying proceedings, this claim should be dismissed.

### E. Number of Victims Enhancement

Ms. Lukkes' next claim revolves around purported ineffective assistance of counsel because counsel allegedly failed to properly inform her on the number of victims, which led to a two-point enhancement under the guidelines, which would have affected her entering a guilty plea. MOTION UNDER 28 U.S.C. § 2255 TO VACATE, SET ASIDE, OR CORRECT SENTENCE, doc. 1 at 48–50. The petitioner also argues an incomprehensible

assertion surrounding her offense level and the "means of identification" related to her identity theft convictions.

The argument fails twice over. First, Mr. Grey *did* initially push against the two-level enhancement for the offense involving 10 or more victims pursuant to U.S.S.G. §2B1.1(b)(2)(A)(i). See DEFENDANT'S OBJECTIONS TO PRESENTENCE REPORT, doc. 96 at 1. Section 2B1.1(b)(2)(A)(i), <u>Larceny, Embezzlement, and Other Forms of Theft; Offenses Involving Stolen Property; Property Damage or Destruction; Fraud and Deceit; Forgery; Offenses Involving Altered or Counterfeit Instruments Other than Counterfeit Bearer Obligations of the United States</u>, states:

If the offense involved 10 or more victims, increase by **2** levels.

Not only were there 10 or more victims in Lukkes' long-running schemes, but trial counsel nevertheless countered the enhancement's applicability. <u>See id</u>. However, in the face of certain defeat, Mr. Grey ultimately withdrew the objection at sentencing. <u>See id.</u> at 10. Grey might have withdrawn the objection to center his sentencing arguments on more meritorious challenges to the PSR, a perfectly sound trial strategy. <u>See Sanders v. Trickey</u>, 875 F.2d 205, 208 (8th Cir. 1989) (explaining how "reasoned strategic decision[-making] of counsel" is "'virtually unchallengeable.'") (*quoting* <u>Strickland</u>, 466 U.S. at 690). <u>See also McCoy v. Lockhart</u>, 980 F.2d 1162, 1164 (8th Cir. 1992) ("Having carefully reviewed the record, we are not persuaded that trial counsel's decision, which clearly was a matter of deliberate trial strategy, was unreasonable. As we said [before], [t]his is the kind of judgment, right or wrong, that trial lawyers regularly make, and we are not convinced that it was incorrect.") (internal quotation marks omitted). Even if there was an avenue to posit there were fewer than 10 victims, it is not for this Court to assess its ultimate merits; rather, it is tasked with determining if trial counsel acted constitutionally sound in his sentencing hearing strategy. It was.

To the extent the petitioner centers this argument on that she would not have pleaded guilty if fully aware of this possible enhancement, it quickly fails. As explained above, *supra*, Ms. Lukkes testified, under oath, that she understood that any possible guideline range proffered by counsel was only a guess at the ultimate range.

TRANSCRIPT, C.R. doc. 129 at 7–8. Further, she testified that she understood it was up to this Court to determine the proper range, and that this Court could also sentence her above the guideline range. Id. at 9. This Court made sure that Ms. Lukkes understood that she "cannot go back and withdraw [her] plea of guilty and start all over in [this] case," which is why it took so many pains to ensure this plea was knowingly and voluntarily given. Id.; *supra* II.B. This claim must also fail.

### F. Actual Loss Enhancement

Ms. Lukkes next brings the Court's attention to her argument surrounding Mr. Grey's alleged failure to further investigate the actual loss owed to the victims of her criminal enterprise. MOTION UNDER 28 U.S.C. § 2255 TO VACATE, SET ASIDE, OR CORRECT SENTENCE, doc. 1 at 51–52. This argument boils down to whether the check petitioner stole from Andy Bernard for $5,376.93, which she deposited into an account under the auspices of Autumn Gregory, constitutes actual loss. Lukkes contends she "never had access to those funds." Id. at 1. She does not, however, deny robbing Mr. Bernard of his check.

Because of the many victims that the petitioner robbed for many thousands of dollars, trial counsel was successful in negotiating an agreement with the United States for loss to be calculated as more than $20,000 but less than $40,000. FINAL PSR, C.R. doc. 103 at ¶ 30. This anchored Lukkes' specific offense characteristic enhancement for actual loss within U.S.S.G. §2B1.1(b)(1)(C), which provides a four-level enhancement for loss of more than $15,000 but less than $40,000. Again, this is another example of competent negotiations and strategy this Court will affirm without more indicia of constitutional defectiveness. See Johnson v. Lockhart, 921 F.2d 796, 799 (8th Cir. 1990) ("This circuit has repeatedly warned against second-guessing a lawyer's trial strategy in evaluating claims of ineffective assistance of counsel.") (internal citations omitted). Finally, petitioner's argument is befuddling when she does not contest that the $5,376.93 check was nevertheless bilked from Bernard. See United States v. Market, 774 F.3d 922, 925 (8th Cir. 2014) (explaining how "actual loss" is "the reasonable foreseeable

pecuniary harm that resulted from the offense.") (*quoting* U.S.S.G. §2B1.1, APPLICATION NOTE 3(A)(i)). Accordingly, this claim holds no merit.

### G. Obstruction of Justice Enhancement

Finally, petitioner asserts Mr. Grey was constitutionally ineffective for failing to object against the two-level obstruction of justice enhancement pursuant to U.S.S.G. §3C1.1. MOTION UNDER 28 U.S.C. § 2255 TO VACATE, SET ASIDE, OR CORRECT SENTENCE, doc. 1 at 53–54. The enhancement stemmed from several phone calls Lukkes made from the Pennington County Jail to her daughter, Savannah Lukkes. In these calls, petitioner "instructed Savannah to access several websites commonly used to gather identifying information on people and cancel the defendant's accounts." FINAL PSR, C.R. doc. 103 at ¶ 22. The petitioner went on to provide the list of email addresses and passwords, and instructed Savannah to alter the passwords. Because she used no "hidden language," Ms. Lukkes contends, the enhancement should not be applied, and the acceptance of responsibility reduction should have been entered. MOTION UNDER 28 U.S.C. § 2255 TO VACATE, SET ASIDE, OR CORRECT SENTENCE, doc. 1 at 53.

> Section 3C1.1, Obstruction or Impeding the Administration of Justice, states:
>
> If (1) the defendant willfully obstructed or impeded, or attempted to obstruct or impede, the administration of justice with respect to the investigation, prosecution, or sentencing of the instant offense of conviction, and (2) the obstructive conduct related to (A) the defendant's offense of conviction and any relevant conduct; or (B) a closely related offense, increase the offense level by **2** levels.

Here, it is of no import that Lukkes was open in her obstruction of justice in her recorded jail calls. It is patently clear petitioner wanted passwords changed to "conceal[] . . . evidence that is material to an official investigation or judicial proceeding." U.S.S.G. §3C1.1, APPLICATION NOTE (4)(D). Critically, the petitioner does not deny that *she instructed her daughter to change passwords* to the very accounts she used to swindle unsuspecting victims through the purchasing of potential victims' information while awaiting sentencing. The obstruction of justice enhancement is not reserved for criminal masterminds and clearly applies to petitioner.

When the petitioner herself does not contest the foundation for this enhancement, it belies belief that Mr. Grey was unsound for not pursuing such a sure-to-fail objection. This claim also fails on initial review.

### H. No Evidentiary Hearing is Required

Petitioner is "entitled to an evidentiary hearing '[u]nless the motion and the files and records of the case conclusively show that [she] is entitled to no relief.'" Jackson v. United States, 956 F.3d 1001, 1006 (8th Cir. 2020) (first alteration in original) (*quoting* 28 U.S.C. § 2255(b)). See also Love v. United States, 949 F.3d 406, 411 (8th Cir. 2020) ("A § 2255 motion can be dismissed without a hearing if (1) the petitioner's allegations, accepted as true, would not entitle the petitioner to relief, or (2) the allegations cannot be accepted as true because they are contradicted by the record, inherently incredible, or conclusions rather than statements of fact.") (internal quotation marks omitted). No evidentiary hearing is required because Ms. Lukkes' six claims cannot be accepted as true because of clear contradictions in the record which are inherently incredible beyond belief. Accordingly, no hearing is required.

### III. CONCLUSION

At sentencing, Judge Viken acknowledged that Mr. Grey filed a "pretty vigorous motion for downward variance," just one of many steps he took to ensure Ms. Lukkes received the best resolution possible under these circumstances. TRANSCRIPT, C.R. doc. 131 at 7. Despite the petitioner's many claims of ineffective assistance of counsel, her knowing and voluntary guilty plea nevertheless must stand. (1) This Court ensured the guilty plea was properly entered after a careful colloquy with Ms. Lukkes under oath; (2) Grey was not ineffective for failing to object to the use of a firearm enhancement; (3) trial counsel adequately resisted a sophisticated weapons enhancement (though ultimately being overruled at sentencing); (4) there is no claim where Grey initially resisted the 10 or more victim enhancement; (5) an unpersuasive argument about failing to further investigate the actual loss enhancement held no chance of success; and (6) there was clear indicia of obstruction of justice before the sentencing court. Because none of these claims can stand, this motion should be dismissed in its entirety.

IT IS HEREBY ORDERED that petitioner Contessa Lukkes' Motion to Vacate, Set Aside, or Correct Sentence Pursuant to 28 U.S.C. § 2255, Doc. 1, is denied.

**TO THE UNITED STATES COURT OF APPEALS FOR THE EIGHTH CIRCUIT:**

Petitioner pleaded guilty to Conspiracy to Commit Bank Fraud; three counts of Bank Fraud; two counts of Aggravated Identity Theft; and Theft or Receipt of Stolen Mail. Ms. Contessa Lukkes was sentenced to 33 months imprisonment for the Conspiracy to Commit Bank Fraud; three counts of Bank Fraud; and Theft or Receipt of Stolen Mail convictions, followed by three years of supervised release, which were to run concurrently. She was also sentenced to 24 months imprisonment on each of the Aggravated Identity Theft convictions, to be run consecutive to each other and to the Conspiracy to Commit Bank Fraud; three counts of Bank Fraud; and Theft or Receipt of Stolen Mail convictions, followed by three years of supervised release on each count to run concurrent to all other sentences of supervised release. Her direct appeal following sentencing was dismissed. Petitioner filed a Motion to Vacate, Set Aside, or Correct Sentence pursuant to 28 U.S.C. § 2255, contending that she received ineffective assistance of counsel. I summarily denied the Motion to Vacate pursuant to Rule 4 of the Rules Governing Section 2255 Proceedings for the United States District Courts.

Pursuant to 28 U.S.C. § 2253, a certificate of appealability may issue only if the applicant has made a substantial showing of the denial of a constitutional right. Petitioner did not and has not made a substantial showing of the denial of a constitutional right.

**IT IS HEREBY CERTIFIED** that there does not exist probable cause of an appealable issue with respect to the Court's order denying petitioner's § 2255 motion. Any application for a certificate of appealability is denied. This is no way hampers the petitioner's ability to request issuance of the certificate by a United States Circuit Judge pursuant to Federal Rule of Appellate Procedure 22.

DATED this 17th day of May, 2022

BY THE COURT:

_____
CHARLES B. KORNMANN
United States District Judge